IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>J. SCOTT ESKIND,<br>LORUS INVESTMENTS, INC., and<br>CAPITAL MANAGEMENT FUND,<br>LIMITED PARTNERSHIP,<br><br>Defendants. | CIVIL ACTION NO.<br>1:02-CV-2429-MHS |

### SPECIAL MASTER'S SECOND STATUS REPORT AND MOTION FOR EXPANDED AUTHORITY

COMES NOW S. Gregory Hays, Special Master for Defendants J. Scott Eskind, Lorus Investments, Inc. and Capital Management Fund, Limited Partnership (the "Special Master"), and files his Status Report and Motion for Expanded Authority and shows as follows:

1. Pursuant to the terms of the Final Judgment Including Order of Permanent Injunction and Other Relief entered on January 20, 2004 ("the Special Master Order"), S. Gregory Hays ("Hays") was appointed as Special Master for Defendants J. Scott Eskind ("Eskind") Lorus Investments, Inc. ("Lorus") and Capital Management Fund, Limited Partnership ("Capital") (collectively

"Defendants").

2. The Special Master Order authorizes and directs the Special Master to take control and possession of all assets to be transferred by the Defendants pursuant to the Special Master Order. Moreover, the Special Master is directed to report to the Court and recommend a method of liquidating such interests and distributing any resulting funds, and any other disgorged funds to the victims of the Defendants' scheme.

3. With the entry of the Special Master Order, this Court directed the turnover by the Defendants of the following assets:

 (a) $94,584.64 held in brokerage accounts frozen by previous order of this Court;

 (b) $3,661,786 representing $2,853,383 in net gains, together with pre-judgment interest thereon in the amount of $808,383;

 (c) $360,000 in civil penalties, $120,000 payable by each Defendant;

 (d) 1184 Dawn View Lane, Atlanta, Georgia (the "Residence");

 (e) Any interest that defendant Eskind has in any business; and,

 (f) 1994 Mercedes Benz E-320, VIN WDBEA66E8KC139649.

## SPECIAL MASTER'S SECOND STATUS REPORT

4. With respect to the assets listed in section 3 (a) through 3 (f) of this

report, the following is the status of the assets turned over to the Special Master:

(a) On February 4, 2004, the Special Master received $52,440.01 from Fidelity Bank by wire transfer and $42,051.62 from BankOne Chicago by wire transfer. The $93.01 difference between the frozen assets and amount recovered by the Special Master relates to service charges.

(b) These sums have not been turned over to the Special Master by the Defendants and, based upon his investigation to date, the Special Master does not believe that the Defendants will be able to comply with this directive.

(c) These sums have not been turned over to the Special Master by the Defendants and, based upon his investigation to date, the Special Master does not believe that the Defendants will be able to comply with this directive.

(d) The Special Master took possession of the Residence and, as set forth in his Motion to Sell the Residence, the Residence was sold on August 2, 2004 for a sales price of $926,500. From this sum, a brokerage commission of $55,800 was paid and Emigrant Mortgage was paid $821,385 in full satisfaction of its mortgage against the Residence. The Special Master Estate

received a total of $22,268 from the sale of the Residence which is slightly more than costs incurred by the Special Master in preserving the Residence pending the sale and in closing the sale. As more particularly set forth in the Motion to Sell the Residence, the Special Master initially listed the Residence for sale at a price in excess of $1 Milllion as recommended by the real estate broker retained by him. However, the highest and only offer received by the Special Master was for the price at which the Residence sold and the Special Master was advised by his real estate broker that this was the best price he could expect to receive for the Residence under current market conditions. In fact, it was only because the Special Master negotiated a substantial discount of the mortgage payoff that there was any net payable to the Special Master Estate from the sale of the Residence.

(e) The Special Master has determined that the Defendant may have held a limited ownership interest in a business know as "The Elbow Room", a bar located in Atlanta, Georgia. The Defendant paid $125,000 for an interest in this business in June, 2002. After a thorough investigation the Special Master has

        determined that the ownership interest is worthless and no recovery is to be expected. For a complete discussion of the issues relating to this business please refer to the report filed by the Special Master, "Special Master's Recommendation for the Liquidation of Defendants' Interests and Distribution to Victims of Defendants' Scheme", filed March 8, 2004.

(f)    The Mercedes Benz E-320 was turned over to the Special Master by the Federal Bureau of Investigation ("FBI"). The auto was in need of repair, as it had not been maintained properly. The auto was placed on the market for sale and subsequently sold for a total of $10,500. This sale was approved by this Court in an Order dated March 8, 2004.

5.    The Special Master opened a checking account and a money market account at Chase Bank in New York for the purpose of administering the Defendants' estate. As of the filing of this report, the cumulative cash balance maintained in this account is $124,678.89.

6.    Contemporaneously herewith, the Special Master, his accountants and attorneys are filing requests for payment of fees and expenses totaling $47,992. The Special Master's requested fees are $14,805, the requested fees and expenses for the accountants to the Special Master are $21,221.71, and the requested fees

and expenses of counsel to the Special Master are $11,966. The Special Master and Counsel to Special Master expended a great deal of effort attempting to maximize the value from the sale of the Residence.

7.  Based on the expected funds available of approximately $76.600, and total estimated victim claims of $2,974,415, the potential payout to creditors in this case, before any additional recoveries, if any, will be approximately 2.5% of the claims.

## MOTION FOR EXPANDED AUTHORITY

8.  During the course of performing his duties as Special Master, the Special Master has been contacted by several victims of Mr. Eskind. The Special Master has provided all information available to the Special Master concerning Mr. Eskind's affairs to those victims who have contacted him. When apprised of the limited funds available for distribution in this case, several of these victims have requested that the Special Master further investigate Mr. Eskind's affairs in order to determine whether any additional funds may be available for distribution in this case. However, the authority to conduct such an investigation is not currently within the powers granted to the Special Master in the Special Master Order and the Special Master is unwilling to engage in further activity which may not result in the recovery of additional fund without prior permission from this Court.

9.  The Special Master has identified several questionable transactions in

which the Defendant was involved and which he would investigate if this Court were to expand his authority. The purpose of such an investigation would be to determine whether these transactions (referred to herein as the "Questionable Transactions") may be set aside or recovered by the Special Master for the benefit of victims as fraudulent conveyances or under other legal theories. The Special Master requests authority to investigate the following transactions and, in the event such an investigation results in the discovery of facts supporting such claims, to bring such legal action as might be necessary to set aside or otherwise recover the Questionable Transactions and any other recoveries which might be possible for the benefit of victims:

(a) Transfers totaling $66,000 paid by Defendant to an individual during the period 1/97 through 5/02. The Special Master would seek documents and information concerning these transactions and ascertain whether these transactions are avoidable;

(b) Two checks were issued by the Defendant on a Fidelity National Bank account in the total amount $315,000. It appears certified checks were issued. The Special Master would seek to identify the recipients of these transfers and the nature of the transactions;

(c) A $200,000 wire transfer took place on September 4, 2002

between one or more accounts of Defendant Eskind and his spouse at Credit Suisse and Wachovia Bank. The Special Master would seek to identify the recipients of these transfers and the nature of the transactions;

(d) $50,000 was deposited from a unidentified account of J. Scott Eskind on July 5, 2002 into an account at Fidelity National Bank. The Special Master would seek to identify the account, any recipients of these funds and the nature of the transaction;

(e) One investor received $114,438.78 on 2/14/02 from Defendant Eskind. The information available to the Special Master indicates that the investor invested only $25,000 with Mr. Eskind. The Special Master would seek documents and information concerning this transaction and ascertain whether these transactions are avoidable.

(f) Subpoena records from Mr. Eskind's CPA, Robert Singer, to determine if taxes were paid and if any possibility for a tax refund.

(g) A total of $30,000 that was paid into an SEI Private trust fund for the benefit of Mr. Eskind's children. The Special Master would seek documents and information concerning this

account, the transaction and ascertain whether these transactions are avoidable;

10.   In addition to investigating the Questionable Transactions, the Special Master requests that his authority be generally broadened to investigate other transfers made by Mr. Eskind and to seek to set aside and recover such transfers where appropriate.

11.   The Special Master cannot predict the success of his investigation or whether it will result in additional recoveries for the benefit of victims.  Moreover, the Special Master will only be able to investigate and bring actions to the extent that there are sufficient funds to conduct such an investigation and pursue such actions.  Although the Special Master believes that the Questionable Transactions should be investigated and intends to act aggressively to increase the recovery for victims, this investigation could result in the exhaustion of the funds remaining in the Special Master and no distribution whatsoever to victims.  Indeed, even if valid fraudulent conveyance claims exist, the potential defendants may not have sufficient financial wherewithal to return such conveyances to the Special Master Estate.  The Special Master has discussed this possible result with those victims who have contacted him and they continue to support a further investigation.

12.   Prior to the filing of this Motion, the Special Master contacted the Securities & Exchange Commission, Plaintiff herein, and forwarded a draft copy of

this motion. The SEC has no objection to the expanded authority requested herein.

13. Prior to granting the Special Master any additional authority in this case, the Special Master proposes to serve this Motion on all victims and to provide them with the authority to respond or comment with respect to the relief sought herein.

WHEREFORE, the Special Master herewith makes and files his Second Report and his Motion for Expanded Relief and requests such other and further relief as may be just and proper.

Respectfully submitted, this 18th day of November, 2004.

    MCKENNA LONG & ALDRIDGE LLP

    <u>s/ Henry F. Sewell, Jr.</u>
    Henry F. Sewell, Jr.
    Georgia Bar No. 636265
    303 Peachtree Street, Suite 5300
    Atlanta, Georgia 30308
    (404) 527-4000

    Attorneys for Special Master

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>J. SCOTT ESKIND,<br>LORUS INVESTMENTS, INC., and<br>CAPITAL MANAGEMENT FUND,<br>LIMITED PARTNERSHIP,<br><br>Defendants. | CIVIL ACTION NO.<br>1:02-CV-2429-MHS |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true, accurate and correct copy of the within and foregoing SPECIAL MASTER'S SECOND STATUS REPORT AND MOTION FOR EXPANDED AUTHORITY by U.S. Mail, postage prepaid, and addressed to:

William P. Hicks, Esq.
Securities & Exchange Commission
3475 Lenox Road, N.E.
Suite 1000
Atlanta, GA 30326-1232

J. Scott Eskind
FCI Jesup
2600 Highway 301 South
Jesup, Georgia 31599

Office of Howard Adam Becker
c/o William C. McFee, Jr., Esq.
Schulten Ward & Turner, LLP
260 Peachtree Street, N.W., Suite 2700
Atlanta, GA 30303

Steven M. Gottlieb, c/o
Christopher O. Stanton
Bryant, Davis & Cowden P.C.
P.O. Box 589
Norcross, GA 30091

-2-

Bruce S. Harvey, Esq.
Office of Bruce S. Harvey
146 Nassau Street, NW
Atlanta, GA 30303-2009

Richard A. Epstein, Esq.
2 Bucks Lane& Hwy. 79, Suite 3
Marlboro, N.J. 07746
Attorney for Emigrant Mortgage

This 18th day of November, 2004.

John Russell Phillips, Esq.
Office of United States Attorney
Northern District of Georgia
75 Spring Street, S.W.
600 United States Courthouse
Atlanta, GA 30335

Emigrant Mortgage Company, Inc.
7 Westchester Plaza
Elmsford, N.Y 10523

MCKENNA LONG & ALDRIDGE LLP

s/ Henry F. Sewell, Jr.
Henry F. Sewell, Jr.
Georgia Bar No. 6362